IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DR. WAYNE H. WELSHER, Individually
and on behalf of all others similarly situated                                            PLAINTIFF

v.                                    Case No. 5:14-CV-05154

FRITO-LAY NORTH AMERICA, INC.                                                          DEFENDANT

**OPINION AND ORDER**

Currently before the Court is Defendant Frito-Lay North America, Inc.'s ("Frito-Lay") motion to transfer or stay (Doc. 12) and brief in support (Doc. 13). Plaintiff Wayne Welsher has filed a response (Doc. 15). Frito-Lay filed a reply (Doc. 16) to Welsher's response without leave of the Court. The Court has considered that reply, but the parties are cautioned that under Local Rule 7.2(b) of this district, only a reply to a response to a motion for summary judgment may be filed as a matter of course. Welsher has also filed a notice of supplemental authority (Doc. 24) to which Frito-Lay has responded (Doc. 25). The Court has considered these filings. For the reasons stated herein, Frito-Lay's motion will be DENIED.

**I.    Background**

This is a consumer-protection case in which Welsher seeks to bring a class action against Frito-Lay. The basis for the action is Welsher's allegation that Frito-Lay sold products—various chips and snack foods—that were improperly labeled per state and federal regulations. Welsher alleges that because Frito-Lay was selling misbranded products to consumers in Arkansas, Frito-Lay violated Arkansas's deceptive trade practices laws, was unjustly enriched, breached implied and express warranties, was negligent, and violated Arkansas's food labeling laws. Welsher submits that he and the putative class of Arkansas purchasers of misbranded Frito-Lay products are entitled to damages and an injunction against Frito-Lay.

1

A similar lawsuit has been filed against Frito-Lay in the Northern District of California, *Wilson v. Frito-Lay N. Am., Inc.*, 3:12-cv-01586-SC (N.D. Cal.) (hereinafter "*Wilson*"). The plaintiff in *Wilson* also seeks to certify a class action. The complaint in that case has been dismissed in part, and the putative class there is limited to California purchasers. *Wilson*, Doc. 73, pp. 24–25[1] (dismissing claims including those based on misbranding and limiting plaintiff's potential class claims to California purchasers). *Wilson* was filed on March 29, 2012, with the second amended complaint filed on May 1, 2013, and the instant case was filed by Welsher on May 22, 2014.

Frito-Lay now moves to transfer this case to the Northern District of California, pursuant to the first-filed rule. Though it is less clearly asserted, the Court also construes Frito-Lay's motion as requesting change of venue under 28 U.S.C. § 1404(a). Finally, Frito-Lay moves the Court to stay these proceedings should the case not be transferred.

## II.   Transfer Analysis

### A.   First-Filed Rule

The "first to file" or "first-filed" rule is a facet of federal comity doctrine intended to "promote efficient use of judicial resources." *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985). The first-filed rule may be used to transfer a case from one federal district court to another when parallel litigation is proceeding concurrently before them. *Midwest Motor Express, Inc. v. Cent. States Se. and Sw. Areas Pension Fund*, 70 F.3d 1014, 1017 (8th Cir. 1995). Parallel litigation is litigation involving the same parties and embracing the same issues. *Orthmann*, 765 F.2d at 121. If both courts have personal jurisdiction and subject matter jurisdiction over the parties and claims, the first-filed rule indicates that "the court

---

[1] All citations to CM/ECF documents use CM/ECF, rather than internal, page numbers.

in which jurisdiction first attached should proceed to adjudicate the controversy." *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1004 (8th Cir. 1993). This rule is not applied in a "rigid, mechanical, or inflexible" fashion, but "in a manner best serving the interests of justice." *Id.* at 1005 (citing *Orthmann*, 765 F.2d at 121). If compelling circumstances exist, the court which obtained jurisdiction later may decide the controversy. *Id.*

In the instant case, neither the parties nor the issues are substantially the same as those in *Wilson*, so the parallelism generally required before comity doctrines come into play does not exist. *Accord Williams v. Sec. Nat'l Bank*, 314 F.Supp.2d 886, 898 (N.D. Iowa 2004) (explaining that parallel lawsuits are a threshold requirement for application of the first-filed rule just as for *Colorado River* abstention). While Frito-Lay is also the defendant in *Wilson*, Welsher is neither a party to that class action nor a putative class member. (Doc. 13, p. 11). There is no apparent overlap of identity, whether strict or substantial, such that a plaintiff's claims in one lawsuit would be precluded by a decision in the other. Although adjudicating Welsher's claims will likely involve interpretation of Food and Drug Administration labeling regulations, the claims themselves arise under Arkansas law, and Welsher's proposed class is limited to Arkansas purchasers of allegedly-misbranded products. (Doc. 1, pp. 18–20, 23–29). Rulings in *Wilson* will doubtless be informative and persuasive on the issue of interpreting the FDA regulations. However, Frito-Lay has not shown that those rulings will resolve the issue of whether selling the products resulted in a violation of Arkansas law. For these reasons, the Court does not find that the parties or issues in these cases are substantially similar.

The authorities cited by Frito-Lay are distinguishable. In many of the cases, there was at least some overlap of parties on each side of the lawsuit. *See, e.g.*, *HRB Tax Group, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 4:12-CV-00501, 2012 WL 4363723, *2 (W.D. Mo.

Sept. 21, 2012) ("In the instant case, the parties in the two actions in question are nearly, but not quite, identical. H & R Block, Inc. is currently a party in the New York lawsuit but not a party in this action. All other parties in the New York lawsuit are parties in this action."). In those cases cited where there was limited or no identity of parties on one side of a dispute, the courts tended to apply the first-filed doctrine only if there was a very substantial identity of issues, such that a decision in one case would essentially decide the other. *See*, *e.g.*, *Gen. Comm. of Adjustment GO-386 v. Burlington N. R.R.*, 895 F. Supp. 249, 252 (E.D. Mo. 1995) ("[T]he legal issue in dispute and the industry affected are identical in all of these cases. Furthermore, although the parties may differ in the cases, they are all carriers and unions or local committees in the railway industry with a significant stake in the resolution of this issue. . . . [T]he issue involved is 'one of national ramifications' that requires a single definitive ruling by a single court . . . ."); *see also Cadenasso v. Metro. Life Ins. Co.*, No. 13-CV-05491, 2014 WL 1510853, *1, *10 (N.D. Cal. Apr. 15, 2014) (applying first-to-file rule in class actions against identical defendants where there could be no overlap of identity on plaintiffs' side because each action raised identical federal law claims based on defendants' nation-wide behavior); *and Achari v. Signal Int'l, LLC*, No. 1:13CV222, 2013 WL 5705660, *1 (S.D. Miss. Oct. 18, 2013) (applying first-filed rule despite no plaintiff overlap on federal law claims for human trafficking scheme directed at Indian nationals).

In these cases, the courts found that the common issues were so substantial as to overcome the lack of identity of parties. Frito-Lay has not shown that such is the case here. While Frito-Lay's nationwide behavior may be identical, Welsher's claims are state law claims that differ from the claims in *Wilson*. Because Frito-Lay has not demonstrated that a decision in *Wilson* will all but resolve the dispute before this Court, the lack of any overlap of identity

among plaintiffs in these cases counsels against applying the first-filed rule. Even if the common issue were more substantial than Frito-Lay has shown, when weighing the substantial nature of the common issue against the lack of identity of plaintiffs, on the balance the Court would not exercise its discretion to transfer under the first-filed rule. *Accord Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) ("Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.").

Finally, even in cases where parallelism exists, "the first court in which jurisdiction attaches has priority to consider the case." *Orthmann*, 765 F.2d at 121. For the same reasons explained below in the Court's analysis of the motion for transfer under 28 U.S.C. § 1404, Frito-Lay has not demonstrated that personal jurisdiction over it first attached—or ever attached—in California for the purpose of resolving this dispute involving food product sales in Arkansas. Indeed, the Court is not sure that Frito-Lay could even make such a demonstration in light of its successful due process arguments before the *Wilson* court. *See Wilson*, Doc. 59, pp. 30–31 ("Courts have thus refused to apply California law to out-of-state purchases where a plaintiff fails to show that the defendant has a significant contact or significant aggregation of contacts to the claims asserted by each member of the plaintiff class, recognizing that the application of California law in such circumstances would be arbitrary and unfair." (internal quotations omitted)). The same reasoning Frito-Lay relied upon in seeking to limit the application of California law only to California purchases would prevent a California court from exercising personal jurisdiction over Frito-Lay for Arkansas purchases. Accordingly, transfer on first-filed grounds will be denied.

    B.    **Section 1404**

Frito-Lay raises 28 U.S.C. § 1404(a) as an independent basis for transfer of this case.

(Doc. 13, pp. 13–14). That statute allows transfers "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). In order to transfer an action, the new venue must have been "any other district or division where it might have been brought or . . . to which all parties have consented." *Id.* Welsher does not consent to transfer to the Northern District of California, so transfer to that venue can only occur under § 1404 if the suit "might have been brought" there. In determining where a suit "might have been brought," the Court looks to the point in time when the suit was filed. *In re Nine Mile Ltd.*, 692 F.2d 56, 59 n.5 (8th Cir. 1982), *holding clarified on other grounds by Mo. Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306, 1310–11 (8th Cir. 1990). Frito-Lay has not demonstrated that California courts have ever had personal jurisdiction over it for sales affecting Arkansas purchasers, and it is not clear that this dispute "might have been brought" in the Northern District of California.

Personal jurisdiction over Frito-Lay in California courts thus arises from Frito-Lay's contacts with California. Because Frito-Lay is a Texas corporation that cannot fairly be said to be "at home" in California, the *Wilson* court appears to be exercising specific, rather than general, jurisdiction over Frito-Lay. *See Wilson*, Doc. 47, p. 8 (claiming in second amended complaint that Frito-Lay is subject to specific jurisdiction in California); *Id.*, Doc. 59 (not raising, and therefore waiving, a 12(b)(2) challenge to personal jurisdiction on a motion to dismiss the second amended complaint). Frito-Lay is correct that it can consent to personal jurisdiction in California. (Doc. 16, p. 4). However, it does not appear to have done so prior to Welsher filing the instant lawsuit. After this lawsuit was filed, counsel for the parties exchanged emails (attached as Exhibit E to Frito-Lay's motion) in which counsel for Frito-Lay wrote: "Also, if we consent to transfer/jurisdiction in N.D. Cal. I don't think the fact that your clients and the putative class are in Arkansas (or the Arkansas claims) would present a jurisdictional

6

problem." (Doc. 13-5, p. 2).  The implication of this email is that consent to personal jurisdiction might be given in the future, and not that it had existed when Welsher filed this action.  This implication is supported by Frito-Lay's reply on the instant motion, which represents that "Frito-Lay has made it clear that it *would* consent [to transfer]," and thus to personal jurisdiction.  (Doc. 16, p. 5) (emphasis added).  Frito-Lay has not shown that this case could have been brought in the Northern District of California, and so transfer to that district is inappropriate under 28 U.S.C. § 1404.  Accordingly, transfer on § 1404 grounds will be denied.

### III.     Stay Pending Resolution of *Wilson*

Frito-Lay also moves the Court in the alternative to stay these proceedings pending resolution of the claims in *Wilson*.  It is well-established that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis*, 299 U.S. at 254.  "The proponent of a stay bears the burden of establishing its need."  *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

Frito-Lay argues that staying this case would conserve resources because otherwise parties and witnesses "would be required to litigate substantially similar class actions in two different districts on staggered schedules that would likely lead to unnecessary duplicative litigation."  (Doc. 13, p. 15).  Frito-Lay also argues that prejudice to Welsher from a stay would be minimal because delay would be minimal, whereas Frito-Lay would be prejudiced by having to defend two separate actions in two separate fora.  (Doc. 13, p. 15).

Frito-Lay has not met its burden to demonstrate that a stay is necessary in this case.  Instead, it has demonstrated that at most it will experience some inconvenience in litigating two suits at once.  Furthermore, the benefits of a stay identified by Frito-Lay do not justify staying

proceedings at this time. If Frito-Lay's representations about the timeliness of the proceedings in *Wilson* were correct, then the Court would still have the benefit of Judge Conti's rulings, as that case was filed before this one and would be expected to remain at a more advanced stage during the pendency of all proceedings. The Court notes, however, that Frito-Lay's representations about scheduling in *Wilson* are subject to the same issues of unforeseen delay that arise in many cases. For example, Frito-Lay's motion in the instant case represents that class certification issues in *Wilson* will likely be resolved by the end of 2014. (Doc. 13, pp. 5–6). Since filing the instant motion, Frito-Lay stipulated to an amendment to the scheduling order in *Wilson*. Deadlines have changed, and the class certification hearing in that case is now scheduled to be heard July 31, 2015. *Wilson*, Doc. 105, p. 2. This undermines Frito-Lay's claim that Welsher will only be minimally prejudiced because delay in *Wilson* will only be minimal. Because Frito-Lay has not met its burden to show that a stay of these proceedings is necessary, its motion in the alternative will be denied.

### IV. Conclusion

IT IS THEREFORE ORDERED that Frito-Lay's motion to transfer or stay (Doc. 12) is DENIED.

IT IS SO ORDERED this 19th day of December, 2014.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE